GLADYS KELLEY AND LAWRENCE KELLEY, HER HUSBAND, PLAINTIFFS-RESPONDENTS, v. JOHN CURTISS, DEFENDANT, AND THE CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued September 13, 1954—Decided October 11, 1954.

Mr. *Vincent P. Torppey* argued the cause for appellant (*Mr. Horace S. Belfatto,* attorney; *Mr. Torppey* of counsel).

Mr. *John A. Laird* argued the cause for respondents (*Messrs. Greenstone & Greenstone,* attorneys; *Mr. Laird* of counsel).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J.   At the trial an involuntary dismissal was granted defendant City of Newark at the end of plaintiffs' case, and the jury returned a verdict of no cause for action in favor of the city's employee, the defendant Curtiss, a mounted police officer.   Plaintiffs, husband and wife, sought damages for injuries sustained when the horse assigned to Curtiss for mounted police duty, while tethered unattended where Curtiss had left it in a driveway

leading to a parking lot, kicked Mrs. Kelley as she walked away after feeding the horse sugar or candy.

Plaintiffs appealed the judgments in favor of both defendants to the Appellate Division, but abandoned the appeal as to Curtiss, and limited the appeal from the judgment for the city to the single question whether plaintiffs' proofs to show active wrongdoing participated in by the city sufficed to withstand an involuntary dismissal in the city's favor. The Appellate Division found that the proofs were sufficient to present a jury question as to that issue and, in an opinion by Judge Clapp comprehensively discussing the principles of the liability of a municipality for torts, reversed and remanded for a new trial against the city, 29 *N. J. Super.* 291(1954). The city sought certification, which we granted, 15 *N. J.* 381 (1954).

Both the city's petition for certification and its brief urge a proposition not advanced in the Appellate Division, namely, that at all events the final judgment upon the verdict in favor of the employee Curtiss is a complete bar to plaintiffs' further prosecution of the action against Curtiss' employer, the city.

We do not think that the city's failure to advance this proposition in the Appellate Division should deter us from considering and deciding it in the circumstances of this case. The asserted bar of the Curtiss judgment is a plea of *res judicata,* an affirmative defense, to be pleaded as such, *R. R.* 4:8–3, *Bango v. Ward,* 12 *N. J.* 415 (1953), although it may also be raised by motion and affidavit, *Kelleher v. Lozzi,* 7 *N. J.* 17, 25 (1951). We may assume that if plaintiffs had followed through with their appeal and had brought the Curtiss judgment before the Appellate Division, the record would have sufficed to permit, if not to require, the city to argue the alleged bar of the judgment, see *McKnight v. Cassady,* 113 *N. J. L.* 565 (*E. & A.* 1934). But that was not the case, and therefore, the judgment being an after-occurring event under *R. R.* 4:15–4, proceedings by the city to supplement the record were requisite to frame the issue. The city made no effort in the Appellate Division to

270

invoke the original jurisdiction of that court to supplement the record, and, while presenting the question in its petition for certification and brief in this court, has made no formal application to us to do so. However, though we assume, while we doubt, the application in the circumstances of this case of the rule of appellate practice that an appellant will not be heard to urge here a point not raised in the Appellate Division, see *State v. Shiren*, 9 *N. J.* 445, 455 (1952), *R. R.* 1:7–1(*c*) and *R. R.* 1:7–4(*c*) (made applicable to the Appellate Division by *R. R.* 2:7–1), the waiver which is the predicate of that rule is of the city's right to be heard here on the point and would not estop the city, upon remand of the case, from seeking leave of the trial court to raise the bar of the judgment by appropriate supplemental pleading. In that circumstance, in accord with the philosophy of our present procedural framework to avoid unnecessary expense and waste of time consistent with the furtherance of the fair administration of justice, we ought not hesitate to adjudge the question if the matter is ripe for our determination. We think it is. Both parties have fully briefed and orally argued the issue on its merits. No objection is or was made by plaintiffs that the technical niceties for presenting the question were not met. We shall exercise our original jurisdiction, *Const.* 1947, *Art.* VI, *Sec.* V, *par.* 3; *R. R.* 1:5–4, and treat the record in the circumstances as if the city had applied for and been granted leave appropriately to frame the issue, and upon that basis proceed to decide it.

██ The decided weight of authority is that where employer and employee are joined as parties defendant in an action for injuries allegedly occasioned solely by the negligence or misfeasance of the employee, a verdict which exonerates the employee from liability requires also the exoneration of the employer. *Vaniewsky v. Demarest Brothers Co.,* 106 *N. J. L.* 34 (*Sup. Ct.* 1929), affirmed on the opinion below 107 *N. J. L.* 389 (*E. & A.* 1931); *Hummers v. Public Service Electric and Gas Co.,* 8 *N. J. Misc.* 689 (*Sup. Ct.* 1930), affirmed 108 *N. J. L.* 196 (*E. & A.* 1931); *Prendergast v. Jacobs,* 110 *N. J. L.* 435 (*E. & A.* 1933); *Restatement,*

*Judgments, sec. 99; 35 Am. Jur., Master and Servant, sec.* 534. The rule is founded upon considerations of fundamental fairness that, if the employee is not to be held responsible for his wrongdoing, the employer whose liability is asserted solely upon the basis of imputed responsibility for his employee's wrong cannot in fairness and justice be required to respond in damages for it. And it does not matter that the jury may have acquitted the employee in error. If the judgment is final it is considered that "* * * The plaintiff has had his day in court on the issue in a forum of his choosing [and the] litigation should come to an end." *Developments in the Law—Res Judicata,* 65 *Harv. L. Rev.* 818, 863 (1952).

The plaintiffs contend, however, that their case against the city is not premised solely upon the negligence or wrong of Curtiss but upon an independent basis of liability, thus bringing the action within the rule of *Batts v. Joseph Newman, Inc.,* 3 *N. J.* 503 (1950). In the *Batts* case the injuries were caused when a cylindrical tank dropped from a truck of the defendant employer. The driver defendant was acquitted of negligence upon proofs that the negligence of other employees of the defendant employer in failing properly to secure the tank to the truck had caused it to fall off. It was held that the exoneration of the driver of negligence would not in the circumstances relieve the employer of liability for the negligent acts of his other employees.

█ We cannot find that plaintiffs' theory of the city's alleged liability as set up in the pleadings and pretrial order has any predicate except the city's alleged imputed liability arising from the alleged wrongful act of Curtiss in leaving the horse unattended in the driveway to the parking lot. Their contentions as stated in the pretrial order contain not the slightest intimation of any other and independent ground. The pretrial order states:

"Plaintiff contends that the City was engaged in a governmental function in that the horse was under the control of the City, through its agent, servant and employee, Curtiss, as a function of police duty, and leaving said horse unattended at the time and place constituted active wrong doing or misfeasance, and it is on this theory the suit is brought against the city."

On this record, however, two arguments opposing the application of the general rule should be considered. The first is that it affirmatively appears from the colloquy between the trial judge and the jury on the return of the verdict in Curtiss' favor that the jury did not acquit Curtiss of negligence but found him to have been guilty thereof. The issues of Curtiss' negligence and Mrs. Kelley's contributory negligence were submitted to the jury and, though not instructed to return special verdicts on each, the jury stated to the trial judge, "We determined, your Honor, that there was contributory negligence on both parts.", "We felt that there was contributory negligence on both sides." The second argument is that the proofs bring the case within the exception to the general rule suggested in the *Restatement, supra, comment b. of section* 99, which recognizes that, dependent upon circumstances, there may be "an independent basis of liability against the person responsible for the act of the tortfeasor * * * where a person negligently puts into the hands of another a dangerous instrument * * * [in which case] a judgment in favor of the other [in an action?] by a person injured thereby does not necessarily bar an action against the supplier of the instrument." *Cf. Wilson v. Brauer,* 97 *N. J. L.* 482 (*E. & A.* 1922). There was evidence here that Curtiss left the horse unattended in the driveway up to an hour each morning during the year before the mishap and that on another occasion several months earlier it was reported to Curtiss' superiors that the horse had kicked a passerby walking through the driveway.

█ But it avails plaintiffs nothing to say that the jury found Curtiss negligent and to agree that the meagre proofs show that the horse left unattended in the driveway was a "dangerous instrument" within the exception. There are also proofs that Mrs. Kelley, as she had done many times before, purposely went to the place where the horse was tethered and fed him candy or sugar and was kicked as she walked away from the animal. Both the City and Curtiss pleaded her contributory negligence as a separate defense. If the colloquy between the trial judge and the jury may be re-

ferred to to show that the jury found Curtiss negligent, equally it may be relied upon to show that the jury also found Mrs. Kelley to be guilty of contributory negligence. Viewed as alternative findings, the judgment is determinative in Curtiss' favor upon both grounds. Such is the rule followed in most jurisdictions, 65 *Harv. L. Rev., supra,* at *p.* 845; it is the rule favored by the *Restatement, Judgments, sec.* 68, *comment n.* The rule rests upon the rationale that "Where the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment. * * *, a judgment for the defendant is not based on one of the issues more than on the other; and it must be said either that both are material to the judgment or that neither is material. * * *, and hence both should be held to be material." *Restatement, supra, comment n.* The alternative choice of no collateral estoppel as to either finding is not favored. *Scott, Collateral Estoppel by Judgment,* 56 *Harv. L. Rev.* 1, 11 (1942).

■ And the result is the same if we ignore the colloquy between the trial judge and the jury and consider only the effect to be ascribed to the general verdict which was entered. The case against Curtiss having been submitted to the jury with instructions that he was entitled to a verdict of no cause for action if the jury found either that he was not negligent or that Mrs. Kelley was guilty of conrtibutory negligence, the general verdict is to be considered as determining both grounds in Curtiss' favor. *Harper, Hollingsworth & Darby Co. v. Mountain Water Co.,* 65 *N. J. Eq.* 479 (*Ch.* 1903); *Wolan v. Ferber,* 12 *N. J. Super.* 167 (*App. Div.* 1951).

It follows that the judgment in favor of Curtiss is a bar to the further prosecution of this action against the City. See *Bango v. Ward, supra.*

Reversed.

*For reversal*—Chief Justice VANDERBILT and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice WACHENFELD—1.